# Rahm's Estate (No. 1).

*Guardian and ward—Trust and trustees—Evidence—Presumption of settlement—Laches.*

The estate of a deceased guardian and trustee will not be held liable for assets alleged to have been omitted from his accounts, where it appears that the ward instituted no proceedings to charge the estate until after twenty-five years from the time he reached his majority and after the death of the guardian, that the court records showed that there was no concealment as to the alleged omitted assets, and that no trick or contrivance had been resorted to with the intention of allaying suspicion and preventing inquiry. Such proceedings should be dismissed because of insufficient proof of fraud; of the lapse of time; of the death of the guardian and trustee; of the presumption of settlement and consequent bar by the statute; and of the petitioner's laches.

Argued Oct. 30, 1907. Appeal, No. 73, Oct. T., 1907, by Fidelity Title & Trust Company, Ancillary Administrator of the Estate of James H. Hopkins, deceased, from decree of O. C. Allegheny Co., Oct. T., 1905, No. 236, dismissing exceptions to adjudication in Estate of Virginia Rahm, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Exceptions to adjudication.

From the record it appeared that Virginia Rahm died in 1870, leaving a will by which she appointed James J. Hopkins her executor. Hopkins subsequently became a trustee of the property left in trust by the will, and also thereafter a guardian of Edward Rahm, Jr., a son of Virginia Rahm. Edward Rahm, Jr., became of age on June 27, 1881. Shortly thereafter Hopkins filed his final account as guardian, and made settlement with his ward. In 1905, Edward Rahm, Jr., filed a petition for a citation to the Fidelity Title & Trust Company, ancillary administrator of the estate of James H. Hopkins, deceased. He claimed that Hopkins, as executor, trustee and guardian, had omitted from his accounts securities aggregating in value $31,512.56. ˊ

The court in an opinion by HAWKINS, P. J., sustained an adjudication in which the above amount was awarded to petitioner, together with interest from October 5, 1875, compounded at four per cent, and amounting to $74,510.99, making an aggregating surcharge of $106,023.55.

MILLER, J., filed a dissenting opinion which is quoted in part in the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*Charles P. Orr*, of *Orr & Lazear*, and *D. T. Watson*, for appellant.

*George R. Wallace*, with him *Henry A. Davis* and *Thomas Watson*, for appellee.

PER CURIAM, November 14, 1907:

In the dissenting opinion in the court below, Judge MILLER sums up the essential facts as follows:

" From the time petitioner became of age until after Hopkins' death in 1906, a period of twenty-five years, he is absolutely silent, and yet the record of every transaction, the disclosure of every share of stock, of every item of property belonging to his mother or his father's trust estates, were an open book in the proceedings of this court; nothing is concealed by the trustee or guardian; he was not silent as to these

so-called omitted assets; he did not resort to a trick or contrivance intending to allay suspicion and prevent inquiry; on the contrary, in the fullest manner, is full disclosure made of the existence of the assets belonging to these estates; every proceeding was in the direct line of search from 1875; the indexes with reference to them are as full as to any proceeding relating to any transaction in this court, connected with the settlement of an estate."

And he concludes: " I would dismiss the proceeding because of insufficient proof of fraud; of the lapse of time; of the death of Hopkins; of the presumption of settlement and the consequent bar by the statute; and of petitioner's laches."

These are the correct conclusions from the whole case. Any one of them would require a reversal of the decree.

Decree reversed and petition dismissed at the costs of the petitioner.